IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ALVIN O. BREWER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-00238-O-BP |
| | § | |
| KILIO KIJAKAZI, | § | |
| ACTING COMMISSIONER OF | § | |
| SOCIAL SECURITY, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Alvin Brewer ("Brewer") applied for Disability Insurance Benefits ("DIB") under the Social Security Act ("SSA"). The Commissioner denied his application, deciding he was not disabled. Brewer appeals. Because the Commissioner applied the correct legal standards in assessing Brewer's medical limitations, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision and **DISMISS** this case with prejudice.

**I.      BACKGROUND**

Brewer seeks disability benefits under Title II of the SSA, claiming disability since April 1, 2019. Soc. Sec. Admin. R. [hereinafter "Tr."], ECF No. 15-1 at 11. Brewer's DIB application specified several medical conditions that limit his ability to work, including depression, anxiety, and hypertension. Tr. 14. The Commissioner denied his application initially and upon reconsideration. Tr. 11.

Brewer challenged the Commissioner's denial before an Administrative Law Judge ("ALJ") who conducted a telephonic hearing and later affirmed the Commissioner's denial. Tr. 11,

22. After the Social Security Appeals Council denied Brewer further administrative review, he filed this civil action seeking judicial review under 42 U.S.C. § 405(g). ECF No. 1 at 1; *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's decision does not become final until after the Appeals Council makes its decision denying the claimant's request for review."). Brewer claims he is disabled and thus entitled to DIB. ECF No. 1.

## II.    STANDARD OF REVIEW

Title II of the SSA, 42 U.S.C. §§ 401-434, governs the disability insurance program. A person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). To determine whether a claimant is disabled and thus entitled to DIB, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. § 404.1520.

First, the claimant must not be presently doing any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* § 404.1572. Second, the claimant must have a severe impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list. *See id.* § 404.1520(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1). Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers his past relevant work ("PRW"). *See Id.* § 404.1520(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite his limitations," *id.* § 404.1545(a)(1), while PRW means work the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1).

Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to his PRW considering his RFC. *Id.* § 404.1520(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* § 404.1520(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).

"A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to

3

resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III. ANALYSIS

The Commissioner, acting through the ALJ, completed the five-step evaluation process here. *See* Tr. 13-22. First, the ALJ found Brewer has not engaged in substantial gainful activity since April 1, 2019. Tr. 14. Second, he found four medically determinable impairments: hypertension, depression, anxiety, and gout. *Id*. The ALJ found the gout to be nonsevere. *Id*. Third, he identified no impairment or combination of impairments that qualify under the federal regulatory list. *Id*. The ALJ then assessed Brewer's RFC:

> After careful consideration of the entire record, I find that the claimant has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) except for frequent balancing, stooping, kneeling, and crouching; and never climbing ladders, ropes, or scaffolds, and crawling. He is able to understand, remember, and carry out detailed but not complex tasks and instructions.

*Id.* at 16. Using this RFC determination and hearing testimony from a vocational expert ("VE"), the ALJ determined at step four that Brewer could perform PRW, specifically as a hand packer, kitchen helper, or warehouse worker. *Id.* at 21. The step-four finding meant Brewer was ineligible for DIB because he was not disabled. *Id.*; *see Lovelace*, 813 F.2d at 58. After finding that Brewer's age, education, work experience, and RFC with additional limitations still allowed him to perform the requirements of other jobs, the ALJ then found Brewer "not disabled" under Sections 216(i) and 223(d) of the SSA. *Id*. at 22.

Brewer argues that the ALJ made three errors that warrant reversal. ECF No 18 at 5. First, he asserts that the ALJ found mild to moderate limitations in step three, but neither incorporated them into the RFC nor explained their rejection. Second, he argues that the ALJ mentioned Dr. Meyer's medical limitations without explaining why he rejected them in his RFC analysis. Third,

4

he claims that the ALJ did not account for Brewer's mental limitations in his hypothetical question to the VE. The Commissioner responds that substantial evidence in the record supports the limitation that the ALJ incorporated into his RFC finding and that the finding and hypothetical question track the language in both the earlier analysis and Dr. Meyer's medical opinion. ECF No. 19 at 8-9.

        **A.    The ALJ incorporated the mild and moderate mental limitations he found in Step Three into his RFC decision.**

Prior to determining a plaintiff's RFC, an ALJ assesses a plaintiff's mental impairments. 20 C.F.R. § 404.1545(c). The ALJ considers evidence of the claimant's abilities to understand, remember, and carry out instructions, as well as respond appropriately to supervision, co-workers, and pressures in a work setting. *Id*. The ALJ uses the "paragraph B criteria" to rate the severity of a plaintiff's mental limitations in the following functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id*. at § 404.1520a(c)(3). Additionally, the ALJ considers limitations and restrictions that affect other work-related abilities. *Id*. at § 404.1545(d).

Before determining Brewer's RFC, the ALJ concluded at step two that Brewer suffered from severe depression and anxiety. Tr. 14. He then analyzed Brewer's mental functional limitations using the "paragraph B criteria." *Id*. The ALJ found Brewer had no limitations in interacting with others and adapting or managing himself. Tr. 15-16. The ALJ found Brewer had a moderate limitation in understanding, remembering, or applying information and a mild limitation in concentrating, persisting, or maintaining pace. *Id*.

Having made these findings, the ALJ made a disability determination. "The well-settled rule in this Circuit is that in making a determination as to disability, the ALJ must analyze both the disabling effect of each of the claimant's ailments and the combined effects of all of these

5

impairments." *Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987) (citation and quotation marks omitted). Moreover, the ALJ must base his RFC assessment on "all of the relevant evidence in the case record," including, but not limited to, "medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, and work evaluations." *Athena G. v. Kijakazi*, No. 1:20-CV-00051-BU, 2021 WL 3729033, at *9 (N.D. Tex. Aug. 2, 2021), *rec. adopted*, 2021 WL 3726741 (N.D. Tex. Aug. 23, 2021); *Eastham v. Comm'r of Soc. Sec. Admin.*, No. 3:10-CV-2001-L, 2012 WL 691893, at *6 (N.D. Tex. Feb. 17, 2012) (citing SSR 96-8p), *rec. adopted* 2012 WL 696756 (N.D. Tex. Mar. 5, 2012). As a part of this assessment, the ALJ must adequately discuss and consider the limiting effects of a plaintiff's mental impairments in formulating his RFC. *Athena*, 2021 WL 3729033 at *11; *Gonzales v. Colvin*, No. 3:15-CV-0685-D, 2016 WL 107843, at *6, 8 (N.D. Tex. Jan. 11, 2016).

The ALJ properly considered the limiting effects and restrictions of Brewer's mental impairments in his RFC decision and included specific mental limitations. Tr. 16-20. In his FCR, the ALJ discussed the mental status exams conducted by providers during the relevant period, stating that the providers consistently found normal recent and remote memory, mood, and affect. Tr. 18, 282, 299. The medical providers also found that Brewer was oriented to time, place, and person, and that he exhibited good judgment. *Id*. The ALJ also discussed at length an October 2020 consultative psychological exam in which Brewer complained of depression, suicidal ideation, deterioration in his memory, and difficulty concentrating. Tr. 18-19, 313. The ALJ then analyzed the medical opinion of Dr. Auguste, the doctor responsible for Brewer's psychological exam. The ALJ noted that Dr. Auguste found Brewer to have some difficulties with short term memory, limited concentration, and dysphoric mood, which led to a diagnosis of depression and anxiety,

but he also found that Brewer was successful in a variety of different mental exercises, demonstrated an appropriate range of emotional expression and judgment and insight, and had no difficulty focusing on requested tasks. Tr. 18-19, 315-316. Finally, the ALJ discussed both Brewer's relationships with others, noting that Brewer denied problems getting along with other people, and the limitations proposed in a Psychiatric Review Technique evaluation and Mental Residual Functional Capacity assessment completed by Dr. Meyer. Tr. 19-20.

The in-depth discussion of the relevant medical opinions demonstrates that the ALJ's analysis contained a thorough discussion of Brewer's mental limitations. Substantial evidence in the record shows that the ALJ considered Brewer's mild and moderate limitations when making his RFC assessment. Thus, the ALJ's conclusion in limiting Brewer to "detailed but not complex information and tasks" in the RFC incorporates the step two and three mental limitations and is consistent with his findings at those steps. *See Mary C.R. v. Kijakazi*, 2021 WL 4476764, at *6 (N.D. Tex. Sept. 30, 2021) (collecting cases holding that limiting a plaintiff to carrying out "detailed but not complex tasks" is consistent with a determination that a plaintiff had moderate limitations with regard to the above mentioned qualities.); *see also Jones v. Saul*, 2021 WL 2895867, at *1, 5 (N.D. Tex. July 9, 2021) (affirming a mental RFC where the ALJ determined the plaintiff had "moderate limitation with regard to concentrating, persisting, or maintaining pace" and the RFC permitted "detailed, but not complex tasks"); *see also McDaniel v. Saul*, 2020 WL 7687128, at *1, 3 (N.D. Tex. Oct. 23, 2020), *rec. adopted*, 2020 WL 7395382 (N.D. Tex. Dec. 17, 2020).

Accordingly, the ALJ properly incorporated the mental limitations he found in steps two and three into the RFC. The ALJ did not err, and reversal is not necessary on this point.

### B. The ALJ did not err by not discussing Dr. Meyer's limitations of Brewer's mental capabilities in the RFC.

Dr. Meyer was the state agency psychological consultant who completed Brewer's Psychiatric Review Technique evaluation and the Mental Residual Functional Capacity assessment. Tr. 20. Dr. Meyer concluded that Brewer had moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, and maintaining pace; or adapting or managing himself. ECF No. 18 at 6. The ALJ mentioned these limitations in his RFC, along with other aspects of her report, and eventually concluded that Dr. Meyer's overall opinion was generally persuasive. Tr. 20. However, prior to determining the RFC in step three, the ALJ only found a moderate limitation in understanding, remembering, or applying information and a mild limitation in concentrating, persisting, and maintaining pace. Tr. 15-16. The ALJ found no limitations in Brewer's interacting with others or adapting or managing himself. *Id.*

Although the ALJ's finding contradicts Dr. Meyer's opinion, the ALJ was not required to describe why he did not agree with Dr. Meyer's limitations in his RFC analysis. As noted above, the ALJ's assessment of a plaintiff's moderate, mild, or lack of limitation, comes at step two and three, not in the RFC assessment. *See* Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1, 3–5 (S.S.A. July 2, 1996); *see also* 20 C.F.R. § 404.1545(a)(1) (RFC is not an assessment of an individual's mental impairments, but what an individual can do despite his limitations or restrictions). The RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8, 1996 WL 374184, at *1. The analysis of limitations at steps two and three merely provides substantial evidence for the later RFC analysis, as one has to do with impairments and the other with function.

*Bauer v. Berryhill,* No. 7:17-cv-00128-M-BP, 2018 WL 3999687, at *7 (N.D. Tex. July 27, 2018), *rec. adopted*, 2018 WL 3993812 (N.D. Tex. Aug. 21, 2018).

Nevertheless, Brewer argues that the ALJ should have assessed and discussed his mental limitations in his RFC analysis. ECF No. 18 at 7. Specifically, Brewer asserts that the ALJ's RFC analysis should have explained why he rejected Dr. Meyer's moderate limitations conclusion for less severe limitations in step three. *Id*. Brewer's argument is not persuasive. In the RFC, the mental limitations merely aid the ALJ in developing the broad categories found in step three in the subsequent analysis. Thus, in the RFC portion, the ALJ need only articulate the persuasiveness of the medical opinions in the claimant's record. 20 C.F.R. § 404.1520c(b); *Guy v. Comm'r of Soc. Sec.*, No. 4:20-CV-01122-O-BP, 2022 WL 1008039, at *3 (N.D. Tex. Mar. 14, 2022), *rec. adopted* 2022 WL 1004241 (N.D. Tex. Apr. 4, 2022).

The ALJ stated in the RFC how persuasive he found Dr. Meyer's opinion and provided a reasoning behind this determination**.** Tr. 20. The ALJ then relied on Dr. Meyer's RFC assessment recommendation to reach his conclusion. *Id*. This analysis of Dr. Meyer's opinion was all that was needed in the RFC analysis portion of the ALJ's decision. The ALJ's mere mention of the moderate limitations in Dr. Meyer's opinion in the RFC analysis, in the context of a complete evaluation of all the information that Dr. Meyer provided the court, does not necessitate a discussion of those limitations in the RFC conclusion.

Therefore, because the ALJ was only required to explain the persuasiveness of the medical opinions in forming the RFC, and not the reasoning behind his severity determinations, the ALJ did not err in not explaining why he rejected some of Dr. Meyer's severity findings in the RFC.

### C. The ALJ properly accounted for Brewer's mental limitations in his hypothetical question to the VE.

Although Brewer challenges the ALJ's formulation of the hypothetical question, "[t]he hypothetical question that an ALJ poses to a VE need only incorporate the disabilities that the ALJ recognizes." *Gardner v. Massanari*, 264 F.3d 1140 (5th Cir. 2001). The hypothetical question here was not defective because it did incorporate the mental limitations the ALJ identified. When the ALJ asked the VE about potential jobs for Brewer, the ALJ included a limitation "to understanding, remembering and carrying out detailed but not complex tasks and instructions.". Tr. 44. This limitation was enough to incorporate Brewer's mental limitations into the hypothetical without specifically stating that that Brewer had mild and moderate limitations. *See Bauer*, 2018 WL 3999687, at *6 (holding a restriction to "simple tasks and routine tasks consistent with unskilled work involving no interaction with the general public" reasonably incorporated a moderate limitation of concentration, persistence, and pace without specifically asking about the limitation).

Additionally, even if the hypothetical question was defective, Brewer waived his right to complain by not suggesting a reformulation at the administrative hearing. If a hypothetical question "omits a recognized limitation and the 'claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the [VE] any purported defects in the hypothetical questions,' there is no reversible error." *Id.* (quoting *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994)). Brewer's representative had a fair opportunity to correct any deficiencies in the ALJ's hypothetical and declined to do so. Tr. 45-46. Thus, even if the ALJ failed to adequately assess Brewer's mental limitations in his question to the VE, which he did not, that error would be harmless.

The ALJ did not err in the hypothetical question he asked the VE because he properly incorporated the disabilities he recognized into the hypothetical question. Reversal is not required on this point.

## IV.    CONCLUSION

Because the Commissioner applied the correct legal standards in evaluating Brewer's medical limitations and substantial evidence supports his conclusions, the undersigned **RECOMMENDS** that Judge O'Connor **AFFIRM** the Commissioner's decision and **DISMISS** this case with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on October 13, 2022.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE